UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LESLIE COLLAGAN, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    1:22-cv-00362-JAW |
| | ) |
| AROOSTOOK COUNTY JAIL, et al., | ) |
| | ) |
|     Defendants | ) |

**RECOMMENDED DECISION AFTER REVIEW
OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, who is in custody at the Aroostook County Jail, filed a complaint against the jail and various county officials regarding the conditions of her confinement. (Complaint, ECF No. 1.)  In addition to her complaint, Plaintiff filed an application to proceed without prepayment of fees (ECF No. 2), which application the Court granted. (Order, ECF No. 7.)  In accordance with the statute that governs actions where a plaintiff proceeds without prepayment of fees, a preliminary review of Plaintiff's complaint was appropriate.  28 U.S.C. § 1915(e)(2).  Additionally, Plaintiff's complaint was subject to screening "before docketing, if feasible or … as soon as practicable after docketing," because she is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Following a review of Plaintiff's complaint, I recommended the Court dismiss the matter unless Plaintiff amends the complaint to address the deficiencies identified in the recommended decision. (Recommended Decision, ECF No. 10.)  Subsequently, Plaintiff

filed two amendments to the complaint. (ECF Nos. 11, 16.)  Plaintiff's complaint, as amended, is subject to the preliminary review contemplated by 28 U.S.C. §§ 1915 and 1915A.

## FACTUAL ALLEGATIONS

In September 2021, Plaintiff requested vegetarian meals due to her religious and spiritual beliefs.  Petitioner asserts that she was influenced by her Christian faith and her interpretation of certain scripture passages.  When the request was denied, Plaintiff stopped eating for eight days.  Plaintiff's health began to suffer, and she asked Defendant King for protein, such as peanut butter, but Defendant King denied her request for food.

The following day, Plaintiff began to faint and hit her head.  Defendant Morrison took her to booking, put her in a special outfit designed to prevent self-harm, and placed her in administrative segregation.  At one point, the special outfit fell off Plaintiff, which left her nude in front of male corrections officers.  Plaintiff contends the conditions in segregation were unsanitary due to human waste.  Her cell consisted of a wooden bench and a hole to use as a toilet.

When she was placed in segregation, she received medical attention for low blood sugar.  Plaintiff was given medication and placed on a vegetarian diet.  She alleges that for five days she was not able to shower, and for a total of seven days, she was not given sanitary products.  Plaintiff alleges that for forty-five days she had no access to writing utensils or envelopes for legal mail and could not call her lawyer.

In December 2022, Plaintiff asked Defendant Morrison to speak with her pastor. In response, Defendant Morrison asked about her religious denomination. Plaintiff has not been permitted to see her pastor. Plaintiff asserts that she wished to speak with a pastor because she was contemplating converting to Judaism. Plaintiff maintains that she should not have to disclose to Defendant Morrison her reason for seeking counsel from her pastor.

Plaintiff alleges that she has converted to Judaism. Plaintiff requested a Torah and Talmud, but she did not receive them. Plaintiff asked to be placed on a kosher diet. Defendant Morrison denied Plaintiff's request for a kosher diet.

## DISCUSSION

**A.     Legal Standard**

28 U.S.C. § 1915 is designed to ensure meaningful access to the federal courts for individuals unable to pay the cost of bringing an action. When a party is proceeding pursuant to § 1915, however, "the court shall dismiss the case at any time if the court determines," inter alia, that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "Dismissals [under § 1915] are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The § 1915A screening requires courts to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim …; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

When considering whether a complaint states a claim for which relief may be granted, courts must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom. *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A self-represented plaintiff is not exempt from this framework, but the court must construe his complaint 'liberally' and hold it 'to less stringent standards than formal pleadings drafted by lawyers.'" *Waterman v. White Interior Sols.*, No. 2:19-cv-00032-JDL, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "This is not to say that pro se plaintiffs are not required to plead basic facts sufficient to state a claim." *Ferranti v. Moran*, 618 F.2d 888, 890 (1st Cir. 1980).

**B.     Eighth Amendment Claims**

The Eighth Amendment prohibition on cruel and usual punishments governs prisoners' treatment after conviction, and the Due Process Clause of the Fourteenth Amendment imposes similar obligations while prisoners are in pre-trial custody. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243 (1983). "Prison officials have a duty to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Giroux v. Somerset Cnty.*, 178 F.3d 28, 31 (1st Cir. 1999) (citations and quotation marks omitted).

Plaintiff's amended complaint arguably could be construed to assert an Eighth Amendment claim based on the food plans she was offered and denied. Prisoners have the right to nutritionally adequate food. *Domegan v. Fair*, 859 F.2d 1059, 1064 (1st Cir. 1988). Plaintiff, however, has not alleged that the meals provided were inadequate to sustain her health. Rather, her medical needs evidently arose because she refused to eat the food the jail provided.

Plaintiff's amended complaint also could be construed to assert an Eighth Amendment claim based on the denial of her request for vegetarian protein sources after she began experiencing medical symptoms. To establish constitutional liability, a plaintiff must satisfy an objective standard by showing he or she was "incarcerated under conditions posing a substantial risk of serious harm," and a plaintiff must satisfy a subjective standard by showing that the defendant "acted, or failed to act, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834).

The objective standard evaluates the seriousness of the risk of harm. There must be "a sufficiently substantial 'risk of serious damage to [the inmate's] future health.'" *Farmer*, 511 U.S. at 843 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would recognize a need for medical intervention. *Leavitt*, 645 F.3d at 497; *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991)). The subjective standard concerns the culpability of the defendant. Deliberate indifference is akin to criminal recklessness, "requiring actual

knowledge of impending harm, easily preventable." *Feeney v. Corr. Med. Servs.*, 464 F.3d at 162 (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993)).

Plaintiff arguably can satisfy the objective prong because her physical condition warranted medical treatment when she was placed in administrative segregation one day later. Plaintiff's amended complaint does not satisfy the subjective prong, however, because she has not alleged any facts to support a plausible inference that any defendant had a deliberately indifferent mental state. Plaintiff does not allege that Defendant King observed any outward manifestation of low blood sugar or any other condition that necessitated immediate medical intervention. Plaintiff alleges that when she began fainting, Defendant Morrison relocated her and arranged for medical attention. Regarding Plaintiff's dietary restrictions, she does not allege that anyone failed to act after obtaining knowledge of a health issue. Plaintiff has not alleged any facts that would support a finding that a defendant was deliberately indifferent to her medical needs.

Unsanitary conditions of confinement can constitute cruel and unusual punishment, with actionable cases involving prolonged exposure to unsanitary conditions, which exposure at a minimum consisted of multiple days. *Hutto v. Finney,* 437 U.S. 678, 686 – 87 (1978) ("[T]he length of confinement cannot be ignored . . . . A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."). *See*, *e.g.*, *McBride v. Deer*, 240 F.3d 1287, 1292 (10th Cir. 2001) (three days in proximity to human waste without adequate cleaning supplies deemed sufficient to state a non-frivolous claim); *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir. 1996) (affirming entry of summary

judgment where plaintiff was subjected to an overflowed toilet for four days); *but see Davenport v. DeRobertis,* 844 F.2d 1310, 1316 (7th Cir.1988) ("limiting inmates to one shower a week does not violate the Eighth Amendment"). Plaintiff alleges that she was kept in a segregation cell for five days with human feces on the walls. She also alleges that she had no ability to bathe and had no access to sanitary supplies for at least seven days while she was menstruating. Because the alleged conditions would be obvious to jail personnel and thus jail personnel would have been aware of the conditions, Plaintiff has alleged a plausible Eighth Amendment claim based on the conditions.

In sum, Plaintiff has not asserted an actionable Eighth Amendment claim against Defendants King and Morrison regarding her diet, medical care, and clothing,[1] but Plaintiff has stated a claim against the jail officials who monitored her and had knowledge of the allegedly unsanitary conditions.

## C.     First Amendment Mail Claim

It is well established "that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To safeguard that right of meaningful access, courts must forego collection of some docket fees, prisoners must be provided with certain materials "to draft legal documents" as well as the ability "to mail them," and prisoners must have access to a law library or other forms of legal assistance "to give

---

[1] While Plaintiff was understandably distressed when the special outfit she was provided fell off her, Plaintiff has not alleged any facts to suggest that anyone intentionally removed her clothing or provided clothing that was likely to fall off her.

7

prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 824–25.

However, "[t]he constitutionally-protected right of access to the courts is narrow in scope." *Boivin v. Black*, 225 F.3d 36, 42 (1st Cir. 2000). "The right of access to the courts, in the context of prisoners, is addressed only to a prisoner's right to attack his conviction and his right to challenge the conditions of his confinement." *Riva v. Brasseur*, No. 15-2554, 2016 WL 9650983, at *1 (1st Cir. Sept. 12, 2016). Imposed restrictions are not actionable "unless [the] restrictions on access impair [the prisoner's] ability to assert legal challenges," *Dodson v. Reno*, 125 F.3d 841, 1997 WL 563384 at *3 (1st Cir. 1997), which means that a prisoner must show "that a nonfrivolous legal claim has been frustrated or impeded." *Hullum v. Maloney*, 201 F.3d 427, 1999 WL 1338078 at *2 (1st Cir. 1999); *see also*, *Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance . . . the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim").

Plaintiff alleges that lawyers' numbers were restricted on the jail phones and for forty-five days, she was deprived of all writing utensils and envelopes used for prisoners' legal mail. Petitioner, however, has been able to pursue this lawsuit, with multiple filings. She has not alleged how the alleged deprivation of access to a lawyer or writing utensils for a time impeded her ability to pursue a claim or present arguments to a court. Plaintiff, therefore, has not alleged an actionable First Amendment mail claim.

8

**D.**   **Religious Exercise Claims**

To show that a jail or prison has infringed a plaintiff's First Amendment free exercise rights, he or she must allege facts to show that the plaintiff was coerced to engage in a particular religious practice, *Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 46 (1st Cir. 2016), was treated unfavorably based on animosity toward the plaintiff's religion, *Kuperman v. Wrenn*, 645 F.3d 69, 77–78 (1st Cir. 2011) or was prevented from participating in a religious practice on grounds not "reasonably related to legitimate penological interests," *Turner v. Safley*, 482 U.S. 78, 89 (1987). Courts consider at least four factors when determining whether a restriction on a religious practice is constitutional: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open; (3) the extent of the impact the accommodation would have on guards and other inmates, and on the allocation of prison resources; and (4) the absence of alternatives to the prison regulation. *Id.* at 89–90.

Title 42, Chapter 21C, of the United States Code, entitled "Protection of Religious Exercise in Land Use and by Institutionalized Persons" (RLUIPA), prohibits state prisons receiving federal funds from imposing "a substantial burden on the religious exercise" of inmates, "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA

9

"protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005).  "RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment."  *Kuperman*, 645 F.3d at 79.

To state a claim for violation of RLUIPA, a prisoner must allege facts that support an inference that the prisoner "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government.  *LeBaron v. Spencer*, 527 Fed. App'x 25, 28-29 (1st Cir. 2013) (internal quotation marks omitted).  In this context, a substantial burden "is one that puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  *Id.* at 29 (quoting *Spratt v. Rhode Island Dep't of Corr.*, 482 F.3d 33, 38 (1st Cir. 2007)).

RLUIPA provides Plaintiff with a claim "against a government," which includes individuals acting under color of state law, but the statute does not negate a State's sovereign immunity.  *See* 42 U.S.C. § 2000cc-1(a); *Sossamon v. Texas*, 563 U.S. 277, 280 (2011).  Most circuit courts have concluded that RLUIPA does not authorize "individual capacity" claims against individuals as under § 1983.  *See Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012) (collecting cases and explaining that RLUIPA was enacted pursuant to Spending Clause authority, and therefore operates like a contract between governments and does not run against individual employees except in their official capacities).

Plaintiff alleges that she has been denied meals consistent with her religious beliefs, even though the jail offers meal plans that are consistent with her religious beliefs. She also alleges that she has been denied access to religious counsel and religious books. Plaintiff's allegations are sufficient to raise a plausible inference that the restrictions are not reasonably related to legitimate penological interests and do not represent the least restrictive means of furthering those interests. *See LeBaron v. Spencer*, 527 F. App'x 25, 30 (1st Cir. 2013); *McEachin v. McGuinnis*, 357 F.3d 197, 203–04 (2nd Cir. 2004). While jail personnel are not necessarily required to supply religious items or furnish support for Plaintiff's religious practices, her allegations are sufficient for one to infer that Defendants have imposed burdens or obstacles on the exercise of her constitutional and statutory free exercise rights. *See Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005). Plaintiff has alleged an actionable First Amendment claim against Defendant Morrison and a RLUIPA claim against the county.

## CONCLUSION

Based on the foregoing analysis, after a review of Plaintiff's amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, I recommend the Court dismiss Plaintiff's claims except her Eighth Amendment sanitation claim and her First Amendment and RLUIPA free-exercise claims.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

(14) days of being served with a copy thereof.

       Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

                                        /s/ John C. Nivison
                                        U.S. Magistrate Judge

Dated this 9th day of March, 2023.